REED et al., Appellees,

v.

KEY–CHRYSLER PLYMOUTH, Appellant.

[Cite as *Reed v. Key–Chrysler Plymouth* (1998), 125 Ohio App.3d 437.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 97–CA–44.

Decided Jan. 23, 1998.

*Samuel A. Reed, pro se.*

*David A. Orlins,* for appellant.

BROGAN, Judge.

Defendant-appellant, Key–Chrysler Plymouth ("Key–Chrysler"), appeals from a judgment of the Xenia Municipal Court, Small Claims Division, awarding plaintiffs-appellees, Samuel A. and Jana Reed, $526.35 plus interest. Key–Chrysler contends that the judgment of the small claims court should be reversed

as against the manifest weight of the evidence. Because we find that the judgment below was supported by the weight of the evidence, we affirm.

Appellees have not filed a brief of reply with this court. Consequently, under App.R. 18(C), we may accept as correct the statement of facts in Key–Chrysler's appellate brief. The facts, according to Key's statement, are as follows. On August 27, 1996, the Reeds' 1992 Plymouth Voyager minivan would not start. Mr. Reed attempted to diagnose and fix the problem himself. It occurred to him, at that time, that the problem might be a bad fuel pump. He was unable to find the problem himself, however.

On August 28, 1996, the minivan was towed to Key–Chrysler. Cecil Patrick, the mechanic who repaired the vehicle, tested it with a DRB hand scanner. He found no faults relating to any starting problems and was able to start the car immediately. He tried to start the vehicle several more times during the day and had no problems starting it on those occasions either. The only problem that Key–Chrysler diagnosed on the first visit was a fuel leak at the fuel filter. This, apparently, was the result of Mr. Reed's failing to get the fuel line back on properly when he attempted to fix the problem.

On September 6, 1996, the minivan did not start again. Key–Chrysler agreed to have the van towed and to rediagnose the vehicle at no charge to the Reeds. Once again the DRB scanner found no faults with the starting system. However, in contrast to the first repair, the mechanic was unable to start the minivan. Accordingly, the mechanic did more extensive testing, including a series of tests on the fuel pump. In conducting these tests, the mechanic determined that there was no fuel pressure and that the voltage and ground system for the pump were functioning properly.

The tests conducted by Key–Chrysler's mechanic were those specified in the 1992 Chrysler Power Train Diagnostic Manual. The manual specifies that, under these circumstances, the fuel pump should be replaced. In addition to replacing the fuel pump, Key–Chrysler also replaced the MAP sensor, which was out of calibration, and the wiring assembly, which had to be replaced because of the different design of the new fuel pump. This second round of repairs cost $526.35.

For the next two and one-half weeks, the Reeds had no problems starting the minivan. During that time, they drove it about two hundred to three hundred miles locally. The Reeds then took the minivan to Orlando, Florida, a distance of approximately eight hundred miles. While in Orlando, the Reeds experienced starting problems with the minivan again. Mr. Reed caused it to start several times by shaking the hood or beating underneath the hood.

When the Reeds returned to Ohio, Mr. Reed purchased a Chilton's repair manual, which helped him diagnose the starting problem as stemming from an

auto-shutdown relay, a replacement for which he purchased for $12 and installed in four minutes. Since that time, the minivan has not had starting problems. Key–Chrysler's tests of the auto-shutdown relay had found it in working order on September 6, 1996.

On February 13, 1997, the Reeds filed a claim in small claims court seeking damages for unnecessary repairs to the minivan. The court held a trial on March 14, 1997. Samuel Reed, Jana Reed, Cecil Patrick, and Ralph Brown, service manager at Key–Chrysler, all gave testimony on that day. On April 11, 1997, the court entered a judgment in favor of the Reeds. It found that the repairs made by Key–Chrysler were unnecessary and awarded the Reeds $526.35 plus interest.

Key-Chrysler raises as its sole assignment of error the following:

"The judgment of the trial court that repairs made to the Reeds' van were unnecessary is against the weight of the evidence."

In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, the Ohio Supreme Court announced the standard for reviewing civil judgments as against the weight of the evidence. The court held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at paragraph one of the syllabus. See, also, *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 353, 632 N.E.2d 507, 509 (following *C.E. Morris*).

In the case *sub judice,* the Reeds presented evidence that, shortly after the repairs were made, their minivan began to have problems starting again. They also presented evidence that, after Mr. Reed replaced the auto-shutdown relay, the vehicle no longer had starting problems. The trial court was permitted to draw a reasonable inference from this sequence of events that the auto-shutdown relay had been the source of the problem from the beginning. The court's finding that the repairs were unnecessary, therefore, was supported by just this competent and credible evidence.

Key-Chrysler argues, however, that their mechanic's testimony, regarding whether the parts that he replaced were defective, was uncontradicted. He testified that he conducted tests according to the protocols established by the automaker and those tests showed that the fuel pump and MAP sensor were defective. Key–Chrysler contends, on this basis, that the repairs were proven necessary by the manifest weight of evidence.

Against this contention, we find that the mechanic's testimony was contradicted by the events related by the Reeds and by the reasonable inferences that could be drawn from them. The Reeds' testimony tended to show that the relay was the actual cause of the problems blamed on the fuel pump. To reconcile the

testimony of the Reeds, whom the trial judge apparently found credible, with the testimony that the fuel pump was defective, the court would have had to construct a scenario in which both the fuel pump and the auto-shutdown sensor failed within a three-week period, and both failures caused the same symptom. This coincidental sequence of events does not seem very probable.

It appears more probable that the test performed by Key–Chrysler on the auto-shutdown sensor failed to reveal its defect. Testimony established that the sensor worked intermittently and that a jarring could cause it to work. The defect in the sensor, then, may have caused the mechanic to misdiagnose a defect in the fuel pump. In any event, the Reeds' testimony provided competent and credible evidence of some such alternate sequence of events in which repairs were performed by Key–Chrysler unnecessarily. Under the standard of review announced in *C.E. Morris,* that evidence is sufficient to prevent a reversal based on the manifest weight of the evidence.

We note, however, that the *C.E. Morris* standard of review is difficult to reconcile with the Ohio Supreme Court's recent opinion in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In that opinion, the Supreme Court recognized that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Id.* at paragraph two of the syllabus. The court explained that "[a]lthough a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Id.* at 387, 678 N.E.2d at 546. The standard of review from *C.E. Morris,* however, is indistinguishable from the standard of appellate review for sufficiency of the evidence. See, *e.g., Hoitt v. Siefer* (1995), 105 Ohio App.3d 104, 107, 663 N.E.2d 717, 719. Following that standard, an appellate court could not, in a civil case, find a sufficiency of the evidence and still conclude that the judgment is against the manifest weight of the evidence, as *Thompkins* allows in criminal cases. Nevertheless, the statutory and constitutional authorities that recognize appellate jurisdiction to review matters of weight of evidence do not support drawing a distinction between civil and criminal cases. See Section 3(B)(3), Article IV, Constitution; App.R. 12(C); App. R. 9(B); R.C. 2321.01; R.C. 2321.18; R.C. 2945.831.

Furthermore, the *C.E. Morris* standard is a rule of such deference that it erases any distinction between review for weight of the evidence in the courts of appeals and review by the Supreme Court of matters of law. See *Ross v. Ross* (1980), 64 Ohio St.2d 203, 204, 414 N.E.2d 426, 427–428 (finding that the Supreme Court "does not undertake to weigh the evidence and pass upon its sufficiency but will ascertain from the record whether there is *some competent evidence* to sustain the findings of the trial court." [Emphasis added.]). This rule of

deference does not appear to us to be compatible with the constitutionally recognized jurisdiction of this court to review matters involving the weight of evidence.

Nor does it appear consistent with the active role that the Supreme Court recognized for courts of appeal in the *Thompkins* decision. Therein, the court applied the following standard of review:

" 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d at 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721.

Although it is clear from the language that this standard from *Thompkins* is applicable, without modification, only to the review of criminal cases, an analogous standard applied to civil cases would resolve the logical inconsistencies noted above. Now that the *Thompkins* opinion has resolved confusion over the distinction between weight and sufficiency in criminal matters, we await further guidance from the Supreme Court on how that distinction should apply in civil matters.

Nevertheless, even if we were not bound by the precedent of *C.E. Morris* and were free to review the weight of the evidence afresh, we would not reach a different result in the instant case. For reasons outlined above, we believe that the evidence presented by the Reeds, and the reasonable inferences that could be derived therefrom, met the burden of proof by a preponderance. Certainly the evidence was not so heavily weighted in favor of Key–Chrysler that we could reverse the trial court's judgment as a "manifest miscarriage of justice." See *Thompkins, supra.* For that reason, and in accordance with the foregoing opinion, appellant's assignment of error is overruled.

The judgment of the small claims court is affirmed.

*Judgment affirmed.*

FAIN, J., concurs.

GRADY, J., concurs in judgment.