ABOOD, Appellant and Cross–Appellee,

v.

NEMER et al., Appellees and Cross–Appellants.

[Cite as *Abood v. Nemer* (1998), 128 Ohio App.3d 151.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18537.

Decided June 10, 1998.

*Lawrence J. Whitney* and *Nancy J. Flower*, for appellant and cross–appellee.

*Charles J. Lally* and *Marlene N. Lally*, for appellees and cross–appellants.

---

DICKINSON, Judge.

Plaintiff Vilma Abood has appealed from two orders of the Summit County Common Pleas Court in her action to avoid certain transfers of property as fraudulent and foreclose on the property to satisfy a previous judgment. One of the orders, entered on April 9, 1996, was a judgment in favor of defendants Manuel Nemer, Melia Corporation, Marlene Lally, Marlene Lally as trustee for the Ray R. Nemer Revocable and Irrevocable Trusts, and Tiger, Inc. The other order, entered on November 4, 1996, was a denial of plaintiff's motion for attorney fees. She has argued that (1) the trial court incorrectly failed to shift the burden to defendants to demonstrate the absence of fraud once she established certain elements of fraud, (2) the trial court's judgment for defendants on her fraudulent-transfer claims was against the manifest weight of the evidence, and (3) the trial court incorrectly denied her motion for attorney fees. This court reverses the April 9, 1996 order because plaintiff presented sufficient evidence to shift the burden to defendants to prove that the transfers were not fraudulent, and defendants failed to sustain that burden, and reverses the November 4, 1996 order and remands the issue of attorney fees to the trial court for consideration in light of this opinion.

Counsel for defendants Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, has cross-appealed on their behalf from an April 18, 1997 order of the Summit County Common Pleas Court that set damages at $50,000 relative to a January 27, 1995 default judgment order that plaintiff had obtained against them. He has argued that (1) the trial court incorrectly failed to dismiss Ray R. Nemer from the case after his death, as no party had been substituted; (2) the trial court incorrectly duplicated a former judgment for $50,000 against Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, when it entered judgment for the same amount against them; and (3) the trial court incorrectly entered judgment for money damages in violation of Rule 54(C) of the Ohio Rules of Civil Procedure because the complaint did not include a demand for money. This court vacates the April 18, 1997 order of the trial court because Nemer's death on September 28, 1995 was suggested on the record on April 12, 1996, and any proceedings in the trial court involving his interests after the latter date were improper.

I

Plaintiff filed this action on July 11, 1994, alleging that defendants Ray R. Nemer and Melia Corporation, against whom she had an unpaid judgment from a

prior case, had fraudulently transferred property to defendants Manuel Nemer, Marlene Lally, Marlene Lally as trustee for the Ray R. Nemer Revocable and Irrevocable Trusts, and Tiger, Inc. She sought to have the transfers avoided and to foreclose on the transferred property to collect on her prior judgment. All defendants except Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, filed answers to plaintiff's complaint. Plaintiff moved for and obtained a default judgment against those two defendants. The default judgment entry, dated January 27, 1995, provided that damages would be determined later.

The case against the remaining defendants was tried to the court on September 18, 1995. On September 28, 1995, Ray R. Nemer died. On April 9, 1996, the trial court entered judgment for the remaining defendants, holding that plaintiff had "not sustained her burden of proof." On April 12, 1996, Ray R. Nemer's death was suggested on the record by his attorney. On November 4, 1996, the trial court entered an order denying plaintiff's motion for attorney fees.[1] On December 2, 1996 and March 10, 1997, the remaining defendants moved for dismissal of the case against Ray R. Nemer, to which plaintiff responded by opposing the motion and by moving the court to set damages in the default judgment against Nemer. Counsel for Ray R. Nemer opposed plaintiff's motion to set damages and argued for dismissal. On April 18, 1997, the trial court set damages against Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, at $50,000, without expressly ruling on the motions to dismiss. Plaintiff timely appealed to this court, and the attorney for defendant Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, timely cross-appealed.[2]

## II. Appeal

### A

Plaintiff's first assignment of error is that the trial court incorrectly failed to shift the burden to defendants to demonstrate the absence of fraud once she established certain elements of fraud. She has argued that she presented enough evidence of certain indicia of fraud to cause defendants to have to establish that the transactions were not fraudulent. Plaintiff's argument is one initially involving the sufficiency of the evidence. If she did, in fact, present sufficient evidence to shift the burden to defendants, this court must then look to defendants'

---

1. This court has been unable to locate any such motion in the record, but presumes one was filed.

2. This court notes that plaintiff has not appealed from or contested the trial court's determination with respect to defendants Marlene Lally as trustee for the Ray R. Nemer Revocable and Irrevocable Trusts, and Tiger, Inc. This opinion, therefore, will address the outcome in the trial court only with respect to defendants Marlene Lally, Manuel Nemer, and Melia Corporation.

evidence to see if they carried their burden of presenting sufficient evidence to rebut the presumption of fraud. See *Crocker v. Hood* (1996), 113 Ohio App.3d 478, 483, 681 N.E.2d 460, 463–464; *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio* (1987), 37 Ohio App.3d 162, 166, 524 N.E.2d 915, 918–919.

■ In reviewing whether plaintiff presented sufficient evidence of indicia of fraud to raise a presumption of fraud and shift the burden to defendants to rebut that presumption, this court must review that evidence and determine whether, if believed, it could have convinced a reasonable fact finder that those indicia had been proven by clear and convincing evidence.[3] See, *e.g., State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (articulating an insufficiency test in the criminal context); *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (distinguishing the legal concepts of sufficiency and weight of evidence). See, also, *Reed v. Key–Chrysler Plymouth* (1998), 125 Ohio App.3d 437, 708 N.E.2d 1021 (outlining necessity of distinguishing between insufficiency and weight of evidence in the civil context based, in part, on *Thompkins, supra*).

### 1.  1987 Transfer

■ At the time of the 1987 transfer, a conveyance was deemed fraudulent (1) as to creditors if it was made without fair consideration and rendered the conveyor insolvent; (2) as to present and future creditors during the continuance of a business or transaction if it was made without fair consideration and the conveyor was or was about to be engaged in such business or transaction for which the remaining property after the transaction was an unreasonably small capital; (3) as to present and future creditors if it was made without fair consideration and the conveyor intended or believed that he would incur debts beyond his ability to pay as they matured; and (4) as to present or future creditors if it was made with actual intent to hinder, delay, or defraud present or future creditors. See R.C. 1336.03, 1336.04, 1336.05, 1336.06, and 1336.07, 129 Ohio Laws 1007–1008. Essentially, to prove fraud, plaintiff had to show either that Melia (through its officers) intended to defraud creditors or that the transfer was made without fair consideration and left Melia insolvent or with too few assets for its business.

On or about November 19, 1987, Melia Corporation transferred the land and building at 451 East Exchange Street in Akron to its officers and directors,

---

**3.** See *Spangler v. Redick* (1991), 74 Ohio App.3d 798, 803–804, 600 N.E.2d 720, 723–724; *McKinley Fed. S. & L. v. Pizzuro Enterprises, Inc.* (1990), 65 Ohio App.3d 791, 796, 585 N.E.2d 496, 499–500 (action to set aside a conveyance as fraudulent requires proof of fraud by clear and convincing evidence).

Manuel Nemer and Marlene Lally. The building housed a bar known as Splash, which was owned and operated by Melia. Melia also transferred to them all of its equipment, fixtures, and supplies. Following the transfer, it owned only its liquor license and a small strip of land next door that was used as a parking lot. Manuel Nemer and Lally then leased the transferred property back to Melia, which continued operating Splash. Plaintiff alleged in her complaint that the 1987 transfer was fraudulent pursuant to former R.C. 1336.04 and 1336.05, which provided that a conveyance was fraudulent if it was made without fair consideration and rendered the conveyor insolvent or left it with unreasonably small capital for its business. She also argued at trial that the transfer was fraudulent because it was done with "actual intent," implicating former R.C. 1336.07.

At the time of this transfer, there was a list of indicia of fraud recognized in case law that could shift the burden of proof from plaintiff to defendants. They included inadequate consideration, transfer of the debtor's entire estate, insolvency as a result of the transfer, close relationship between the parties to the transfer, reservation by the debtor of an interest in the transferred property, and a threat or pendency of litigation. See *Cardiovascular & Thoracic Surgery, supra*, 37 Ohio App.3d at 163, 524 N.E.2d at 916. The evidence adduced at trial by plaintiff established that Melia Corporation transferred the bulk of its assets to Manuel Nemer and Marlene Lally during 1987; that the parties were the officers and directors of the corporation; and that the property was leased back to Melia, which continued in business as before the transfer. This was proof of three of the indicia of fraud.

In addition, plaintiff elicited the following testimony from Manuel Nemer:

"Q. And in 1987 that property was transferred from the corporation to you and Marlene who were and are officers in that corporation, correct?

"A. Right.

"Q. Why did you transfer that land?

"A. Well, because I, for the record, put too much money in to protect my interests, a lot of personal loans I borrowed on my name and her name.

"Q. You personally borrowed money and put it into the corporation?

"A. Yes.

"Q. Why was that?

"A. Well, because I want to pay my bills and keep myself going.

"Q. It's because Melia didn't have the money to do that, right?

"A. Right."

Plaintiff also questioned Lally regarding the reasons for the 1987 transfer:

"Q.  As you are well aware, that 1987 deed transfers 451 East Exchange from Melia Corporation to you and Manuel who were the officers.

"Why did you do that, why did you effectuate that transfer?

"A.  We had to make a decision about the liability that we had incurred on these various loans that we had taken out for the corporation.  We had personal liability on several loans and the business was not making what we thought it would be making or what we hoped, and so in order to protect our investments and our personal liability that was on the line, we had a couple meetings about it. We talked about it for a while and then finally just transferred the property to our names to secure that.

"Q.  So this was then to satisfy your personal loans, to satisfy loans that you had taken and put your name on?

"A.  Yes.

"Q.  Because Melia couldn't meet those obligations?

"A.  Melia was not generating what we had initially hoped would be generated.

"Q.  How much did you pay Melia then for that exchange, the 451 East Exchange?

"A.  We had been putting money in all along and we had signed on the loans personally so that was the exchange.

"* * *

"Q.  How did Melia benefit by your taking possession of this property?

"A.  Melia was viable.  Melia kept going.  We kept it alive.  We didn't want it to fold."

This testimony by the officers of Melia was a sufficient showing that the 1987 transfer left Melia insolvent, especially since, by their own admissions, Melia was unable to meet its obligations to other creditors on its own even before the transfer.  At that time, R.C. 1336.02 provided, "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  129 Ohio Laws 1007.  Melia, already unable to meet its obligations to other creditors without further loans and failing to generate the level of income that Manuel Nemer and Lally had hoped, transferred the bulk of its assets to Manuel Nemer and Lally, which left it with only its liquor license and the small parking lot land strip.  All of the above evidence, taken together, showed that the value of Melia's assets following the 1987 transfer was less than it would need to pay its debts.

Plaintiff, therefore, presented in her case-in-chief sufficient proof of four of the indicia of fraud, one of which was insolvency, and thereby shifted the burden of proof to defendants.[4] It then became defendants' burden to explain the transaction and rebut the presumption that it was fraudulent. Based on plaintiff's allegations, they had to show either that the transfer was made for fair consideration or that Melia was not, in fact, left insolvent or with unreasonably small capital.

During 1987, R.C. 1336.03 provided that fair consideration was given for property when, in good faith, property was conveyed or an antecedent debt was satisfied as a fair equivalent therefor, or when the property was received in good faith to secure a present advance or antecedent debt that was not disproportionately small in comparison to the transferred property. As mentioned above, R.C. 1336.02 provided that a person was insolvent "when the present fair salable value of his assets [was] less than the amount that [would] be required to pay his probable liability on his existing debts as they [became] absolute and matured."

In their brief to this court, Manuel Nemer and Lally have failed to point to anything in the record that shows how they rebutted the presumption of fraud by showing either that there was fair consideration for the transferred property or that Melia was neither insolvent nor left with unreasonably small capital. They have asserted that the transfers were "made to compensate Manuel Nemer and Marlene Lally for the loans of personal funds * * * which each of them made to Melia Corporation," that their loans to ensure that Melia could meet its obligations suggest "lack of intent to defraud creditors," and that the trial court adopted a totality-of-the-circumstances test in determining that the 1987 transfer was not fraudulent. These assertions are not sufficient to demonstrate that they met their burden at trial of rebutting the presumption of fraud raised by plaintiff.

---

4. Plaintiff has asserted that she also established that Melia did not receive fair consideration for the transfer by presenting evidence that the only consideration given Melia for the transfer consisted of antecedent debts Melia owed to Manuel Nemer and Lally and that no evidence was presented by defendants that the transfer was accompanied by an agreement to extinguish those debts. Plaintiff has argued that antecedent debt can serve as adequate consideration only if there is an agreement to extinguish the debt, pursuant to *Cellar Lumber Co. v. Holley* (1967), 9 Ohio App.2d 288, 292, 38 O.O.2d 341, 343–344, 224 N.E.2d 360, 363–364. Plaintiff, however, has misplaced the burden in this instance. To meet her burden of establishing lack of fair consideration as one of the indicia of fraud, she could not rely on defendants' alleged failure to produce evidence of an agreement to extinguish the antecedent debts; rather, she would have had the burden of showing that there was no agreement to extinguish it, for example, by eliciting testimony from Manuel Nemer or Lally that there was no such agreement. Otherwise, she was in no position to assert that she met her burden of showing that the antecedent debts were insufficient consideration, especially in light of the fact that she elicited testimony from Lally that the 1987 transfer was to satisfy the personal loans she and Manuel Nemer had made to Melia.

Furthermore, based on its own examination of the record, this court concludes that defendants did not, in fact, present sufficient evidence to rebut the presumption of fraud raised by plaintiff. They did not present evidence that demonstrated that Melia received fair consideration for the 1987 transfer; the fact that antecedent debts existed was not enough, as they failed to present any evidence of an agreement that the debts were to be extinguished by the transfer. See *Cellar Lumber Co. v. Holley* (1967), 9 Ohio App.2d 288, 292, 38 O.O.2d 341, 343–344, 224 N.E.2d 360, 363–364. Nor did defendants present evidence showing that Melia was solvent or that it had sufficient capital following the transfer. The fact that Melia was able to pay its bills and meet its obligations to other creditors was not enough, considering the testimony by defendants that Melia was able to do so only because they kept lending money to it. No net increase in worth would have been effected by any of defendants' loans to Melia, and, therefore, they would have made no difference in whether Melia met the definition of "insolvent." According to defendants' testimony, the loans were necessary to enable Melia to pay its bills, and the 1987 transfer was made because Melia was not generating enough funds to pay back those loans. Without something in the record to the contrary, it must be concluded that Melia either had fewer assets than liabilities or had an unreasonably small capital for the business in which it was engaged. Defendants, therefore, failed to rebut the presumption of fraud raised by plaintiff's evidence, and plaintiff was entitled to a finding that the 1987 transfer from Melia to Manuel Nemer and Lally was fraudulent as to her.

### 2. 1992 Transfer

During 1990, Ohio adopted the Uniform Fraudulent Transfer Act, effective September 28, 1990, which replaced the former code sections governing fraudulent conveyances. In discussing the 1992 transfer of property from Melia to Manuel Nemer and Lally, therefore, the new statutes must be applied. On or about May 10, 1992, Melia transferred its interest in the strip of land it used as a parking lot to Manuel Nemer and Lally, who leased it back to Melia. At that point, Melia retained only its liquor license in its own name, according to testimony at trial.

Plaintiff has argued that she proved the 1992 transfer to have been fraudulent under new R.C. 1336.04(A)(1), 1336.04(A)(2), 1336.05(A), and 1336.05(B). She may not, however, properly make all of these arguments on appeal. Although she did raise claims under R.C. 1336.04 and 1336.05 generally in her complaint, she abandoned all claims other than the one involving R.C. 1336.04(A)(1) during the trial court proceedings relating to the 1992 transfer. First, in her opening statement, after outlining the background facts and allegations of the case and generally referring to the allegation that the transfers at issue had been fraudulent, she made the following statements:

"The Court will hear certainly other information about all of these allegations.

"We also have certain documents that tend to prove that these transfers were made fraudulently. According to the statute which the Court has already heard a little bit about, Section 1336, there are a dozen or so factors that the Court is able to look at when determining actual intent under the intent to transfer a piece of property fraudulently.

"I would like to point out for the Court that we'll hear from certain people today in terms of proving actual intent.

"We would simply ask that after hearing all the evidence placed—or all the information placed into evidence by the plaintiff that the Court finds in her favor and render these certain transfers fraudulent and have them avoided so that these judgments from the 1991 case can be satisfied. Thank you."

Second, when plaintiff rested her case and defendants moved for a directed verdict on all counts of plaintiff's complaint, plaintiff responded by asserting that she had presented evidence showing the transfers to have been fraudulent and attempted to support her assertion by going through the listed factors in R.C. 1336.04(B), which are the factors a court may consider when determining actual intent under R.C. 1336.04(A)(1). After arguing how she had proven most of the factors, plaintiff stated that she "[did] have a case here" and that she had "proven these issues by the defendants' own testimony," and asked that the "Rule 41 motion to dismiss be denied." That ended her response to defendants' motion for a directed verdict.

Third, in plaintiff's posttrial brief, submitted by agreement in lieu of closing arguments, she addressed the fraudulence of the transfers by referring only to R.C. 1336.04(A)(1). She introduced the statute, listed some of the factors to be considered in determining actual intent under R.C. 1336.04(A)(1), outlined how the evidence had established those factors, and wrote:

"Clearly, these transfers were made with the actual intent to avoid claims of creditors. As such, [plaintiff] respectfully requests these transfers be declared fraudulent and avoided to the extent necessary to satisfy her claims."

In the "Conclusion" section of the brief, the only mention of the fraudulence of the transfers was the following:

"The testimony and documentary evidence presented at trial established that the transfers from Melia to Nemer and Lally (both real property and other assets) did take place. Additionally, a number of factors set forth in Ohio Revised Code 1336.04 were present and therefore established the actual intent to defraud [plaintiff]. Finally, the evidence established that the 1987 and 1992 transfers from Melia to Nemer and Lally rendered the corporation insolvent."

Fourth, the trial court's judgment entry addressed plaintiff's fraudulent-conveyance claim only in relation to R.C. 1336.04(A)(1), which further supports a conclusion that plaintiff led the trial court to believe that her only claim at trial was based on an alleged violation of that section. This court, therefore, in analyzing the issues relating to the 1992 transfer, will address only plaintiff's arguments concerning her allegation that the 1992 transfer was fraudulent pursuant to R.C. 1336.04(A)(1).[5]

Under the Uniform Fraudulent Transfer Act, R.C. 1336.04 provides:

"(A) A transfer made * * * by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made * * *, if the debtor made the transfer * * * in either of the following ways:

"(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

"(2) Without receiving a reasonably equivalent value in exchange for the transfer * * *, and if either of the following applies:

"(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

"(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

"(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

"(1) Whether the transfer * * * was to an insider;

"(2) Whether the debtor retained possession or control of the property transferred after the transfer;

" * * *

"(4) Whether before the transfer was made * * *, the debtor had been sued or threatened with suit;

"(5) Whether the transfer was of substantially all of the assets of the debtor;

---

**5.** In arguing her claim regarding the 1987 transfer, plaintiff did not similarly restrict herself at trial to arguing only under the former section regarding actual intent. Under the former fraudulent-conveyance sections, the factors considered indicia of fraud could go to any of the sections describing how a conveyance could be deemed fraudulent. Under the current sections in R.C. Chapter 1336, those same indicia are included in the longer list of factors going only to actual intent pursuant to R.C. 1336.04(A)(1). Using the factors in prosecuting her claim that the 1987 transfer was fraudulent, therefore, did not confine plaintiff to the former actual-intent section, as using them did for the claim involving the 1992 transfer.

"* * *

"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred * * *;

"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made * * * ."

Pursuant to R.C. 1336.02(A), a debtor is insolvent if "the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation" and is presumed insolvent if he "generally is not paying his debts as they become due."

At least two Ohio appellate courts have held that, pursuant to these new statutes, the plaintiff may still shift the burden of proof of a violation of R.C. 1336.04(A)(1) by presenting proof of enough of these indicia of fraud. See *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.* (1993), 87 Ohio App.3d 644, 650, 622 N.E.2d 1113, 1117–1118; *Huntington Natl. Bank v. Ginn* (Dec. 26, 1996), Cuyahoga App. No. 70392, unreported, 1996 WL 736898. This means that, as discussed above in relation to the 1987 transfer, it must first be determined whether plaintiff presented sufficient evidence of these factors to shift the burden of proof to the defendants and then whether defendants carried their burden to rebut the presumption of fraud.

The 1992 transfer was made to insiders, *i.e.*, officers and directors of Melia Corporation; Melia retained possession or control afterwards in continuing to operate Splash; plaintiff's suit against Melia had been instituted the previous year; and the transfer was, according to the insiders, substantially all of Melia's assets. In addition, Manuel Nemer testified that, financially speaking, Melia was not "doing very well at all" in 1992 and that he had to take out loans just to pay its bills:

"Q. How was Melia doing in 1992?

"A. 1992.

"Q. Financially in 1992.

"A. We weren't doing very well at all.

"Q. Not very well at all?

"A. No.

"Q. Did you have enough money to pay your bills?

"A. I got some loans.

"Q. You got loans to pay your bills?

"A. Um-hum, I put money for myself.

"Q. But the corporation didn't have any money on its own?

"A.   Have some.   Whatever we needed, we put in."

This evidence established that Melia was presumed to have been insolvent as of the time of the 1992 transfer pursuant to the new R.C. 1336.02.   At least five of the statutory factors going to actual intent, then, were established by plaintiff at trial, enough to shift the burden to defendants to rebut the presumption of fraud that arose.

R.C. 1336.08(A) provided a way for defendants to rebut this presumption:  "A transfer * * * is not fraudulent under division (A)(1) of section 1336.04 of the Revised Code against a person who took in good faith and for a reasonably equivalent value * * *."   See *Baker & Sons, supra,* 87 Ohio App.3d at 650–651, 622 N.E.2d at 1117–1119.   Defendants, however, did not rebut the presumption pursuant to this section.   As mentioned above, they presented no proof that Melia received a reasonably equivalent value for the property transferred.   Their antecedent debts were not enough absent an agreement to extinguish those debts, and they did not establish that there was any such agreement.   See *Cellar Lumber, supra,* 9 Ohio App.2d 288, 38 O.O.2d 341, 224 N.E.2d 360.   Nor did defendants rebut the factors established by plaintiff to shift the burden in the first place.   It was uncontested that Melia, involved in a lawsuit already filed by plaintiff against it, transferred essentially all of its assets to insiders but retained possession and control of the property transferred.   Defendants also failed to rebut Melia's presumed insolvency.   They presented evidence that the bills got paid, but, according to Manuel Nemer's testimony at trial and the arguments made to this court, he had to pay some of the bills himself, which meant that Melia was not paying its bills itself.   See R.C. 1336.02(A)(2).   Plaintiff was, therefore, entitled to a finding that the 1992 transfer was fraudulent as to her. Plaintiff's first assignment of error is sustained.

### B

Plaintiff's second assignment of error is that the trial court's judgment for defendants on her fraudulent-transfer claims was against the manifest weight of the evidence.   In light of the disposition of the first assignment of error, this assignment of error is overruled as moot.

### C

Plaintiff's third assignment of error is that the trial court incorrectly denied her motion for attorney fees.   The trial court, in considering her motion, no doubt made the determination based, at least in part, on the fact that plaintiff lost at trial against these defendants.   This court, however, has reversed that judgment, removing part or all of the trial court's basis for its decision.   Plaintiff's third assignment of error, is, therefore, sustained, and this matter is remanded to the

trial court for consideration of whether plaintiff is entitled to attorney fees in light of her having proven her fraudulent-transfer claims at trial.

### III. Cross–Appeal

#### A

■ The first error cross-assigned by the attorney for Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, is that the trial court incorrectly failed to dismiss Ray R. Nemer from this case after his death, as no party had been substituted. Ray Nemer died on September 28, 1995; a suggestion of his death was filed on April 12, 1996; a motion for substitution pursuant to Rule 25 of the Ohio Rules of Civil Procedure was filed by plaintiff on April 23, 1996; and the trial court, never having ruled on the motion, proceeded to set damages against him of $50,000 in its April 18, 1997 order over a year later.

Ray Nemer's counsel argues that it was incumbent on plaintiff to name the party to be substituted for Ray Nemer in her motion for substitution and that, because she had not named a person, the case against him should have been dismissed once the ninety-day time limit found in Civ.R. 25 had been exceeded. In her motion, plaintiff requested that the court enter an order substituting the proper party, explaining that plaintiff could not name the party to be substituted because Ray Nemer's attorney had not disclosed any information about Nemer's death, about whether there was a personal representative for him, or about the status of his estate.

■ This court rejects Nemer's counsel's argument. First, Civ.R. 25 requires that a motion for substitution be filed within ninety days after the death of a party is suggested on the record. It does not require that the substitution actually be completed by then. Plaintiff complied with this requirement by filing her motion eleven days after the suggestion of Ray Nemer's death. Second, as for ascertaining the party to be substituted, plaintiff explained to the trial court why she was unable to name such party, and Nemer's counsel never filed anything with the trial court suggesting a proper substitute for Nemer. It was the duty of the trial court, following plaintiff's motion, to order substitution for the deceased party. See Civ.R. 25. If it lacked the necessary information to do so, it could have ordered Ray Nemer's counsel to provide it or held a hearing to determine the proper party for substitution. Plaintiff should not be held responsible for failing to determine a proper substitute, especially since she explained in her motion why she was unable to do so. See, *e.g., Perry v. Eagle–Picher Industries, Inc.* (1990), 52 Ohio St.3d 168, 171, 556 N.E.2d 484, 487–488 (regarding failure of opposing party to serve a suggestion of death on a deceased's personal representative, the court held that service on deceased's attorney was sufficient because he was in the best position to ascertain the location of the

deceased's personal representative and, therefore, the duty to do so should be allocated to him rather than to the opposing party).

■ Although this court rejects Nemer's counsel's specific argument that any claims against Ray Nemer should have been dismissed, it finds it necessary, in the interests of justice, to raise *sua sponte* the issue of the validity of the trial court's proceedings subsequent to the suggestion of Nemer's death on the record on April 12, 1996. Once that suggestion of death was filed, the trial court was without authority to conduct proceedings involving Nemer's interests until a proper substitution of parties had been made or the case against him had been dismissed. See *Lee v. Burns* (Apr. 21, 1994), Montgomery App. Nos. 14297 and 14321, unreported, 1994 WL 164054; see, also, *Schectman v. Manitsas* (Mar. 26, 1990), Butler App. No. CA89–04–056, unreported, 1990 WL 32761. The trial court's order of April 18, 1997, is, therefore, vacated, and this matter is remanded for proceedings consistent with this opinion.

## B

The second error cross-assigned by the attorney for Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, is that the trial court incorrectly duplicated a former judgment for $50,000 against Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, when it entered judgment for that same amount against them. In light of this court's disposition of Nemer's first cross-assignment of error, this cross-assignment of error is moot and is overruled on that basis.[6]

## C

The third error cross-assigned by the attorney for Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, is that the trial court incorrectly entered judgment for money damages in violation of Civ.R. 54(C) because the complaint did not include a demand for money. This cross-assignment of error, like the second one, and for the same reason, is overruled as moot.

## IV

Plaintiff's first and third assignments of error are sustained. Plaintiff's second assignment of error is overruled. The April 9, 1996 and November 4, 1996 judgments of the trial court are reversed, and this matter is remanded for further proceedings consistent with this opinion.

The errors cross-assigned by the attorney for Ray R. Nemer and Ray R. Nemer, d.b.a. Splash, are overruled, but the trial court's April 18, 1997 order is

---

6. Counsel for plaintiff conceded at oral argument of this case that she was not entitled to this second judgment for $50,000.

nevertheless vacated for the reasons stated above.   That matter is remanded to the trial court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and vacated in part,*
*and cause remanded.*

SLABY, P.J., and QUILLIN, J., concur.