OPINION
{¶ 1} Appellants, David DiNunzio ("David") and Peter DiNunzio ("Peter") appeal the judgment of the Lake County Court of Common Pleas granting appellees, Charles Davis and Caren Nelson, a stalking civil protection order. We affirm.
 {¶ 2} On May 12, 2004, Charles Davis and Caren Nelson filed a petition for a civil stalking protection order pursuant to R.C. 2903.214 against David and Peter DiNunzio, their neighbors. In support, Davis and Nelson alleged the DiNunzio's had been harassing them since they moved into their home on August 28, 2003. Since this date, Davis and Nelson claimed the DiNunzios had threatened and verbally abused them on a regular basis and, on May 11, 2004, David DiNunzio assaulted Davis with a metal pipe in front of a police officer. Pursuant to this petition, the trial court granted Davis and Nelson a temporary ex parte order effective until May 18, 2004. After obtaining a continuance, a full hearing on the issue was held on May 27, 2004. The following testimony was adduced at the hearing:
 {¶ 3} Officer Timothy Baker testified he responded to a call from the Davis/Nelson residence regarding a neighbor disturbance. Upon his arrival, the officer was confronted by Davis who stated he was mowing his yard when Peter drove a backhoe into his path. Davis briefly described the ongoing property line disputes he and the DiNunzios had. As the officer walked into the back yard, he observed a backhoe in front of a lawnmower, the former owned by the DiNunzios and the latter owned by Davis.[1]
 {¶ 4} David then approached Officer Baker and detailed the boundary dispute the neighbors were having. During their discussion with the officer, Davis stated that David had threatened him with a pipe. David denied doing so and Davis offered to show the officer the pipe. As Davis walked toward the backhoe, David chased him. Both arrived at the backhoe at the same time. Davis reached down near the backhoe and a struggle between the men ensued over the pipe. During the struggle, Davis fell backwards and David fell on top of him. The officer testified that, while he could not see the entire struggle, David appeared to strike Davis. Ultimately, the officer had to strike David with his baton to remove him. According to the officer, Peter descended from the backhoe and grabbed the pipe. Officer Baker ordered Peter to drop the pipe. He did not and as a result, the officer drew his firearm and repeated the order. Peter complied and fled into the house. David was subsequently arrested for assault and persistent disorderly conduct.
 {¶ 5} With respect to the May 11, 2004 incident, Charles Davis testified to roughly the same sequence of events. He further testified, however, that he was in fact struck with the pipe over which the struggle began. Moreover, Davis testified from the time he and Nelson moved into their home, the DiNunzios harassed them over property boundaries. After moving in, Davis and Nelson had the property surveyed; however, according to Davis, Peter DiNunzio did not like the outcome of the survey and pulled the surveyors stakes from the ground. After this, Davis indicated that problems immediately escalated. Most germane to this appeal, Davis testified that he had two physical confrontations with David DiNunzio prior to the May 11, 2004 incident.[2] First, Davis testified that approximately one month before the May 11th confrontation, he and David had a dispute in the presence of the police. During the dispute, Davis testified David "reached" for him. Davis stated the officers had to "grab" David and "take him away and talk to him." Next, Davis testified that a week prior to this incident, David swerved his car at him while Davis was mowing his yard. Davis testified that, as a result of these confrontations, he feared the DiNunzios and had experienced significant emotional stress.
 {¶ 6} Caren Nelson testified to similar events already mentioned. Moreover, she testified that "every time I walk outside of my house I am called a whore. Told I was going to jail. `You are going to jail you drunken whore. You trailer trash.'" As a result, Nelson claimed she was experiencing mental stress because she could not walk into her own backyard without concern for harassment.
 {¶ 7} Peter DiNunzio, David's father who lives behind David, testified that he first met Davis and Nelson when he observed them walking near his son's property. Peter approached Davis and Nelson, asked who they were and commenced a discussion about the property lines. Peter indicated that Davis and Nelson had threatened him and his son on different occasions. Peter testified to one incident where Nelson brandished hedge clippers in a threatening fashion.
 {¶ 8} With respect to the May 11, 2004 incident, Peter stated that he parked his backhoe in front of Davis's lawnmower because Davis was cutting grass on David's property. Peter testified that Davis became vulgar with him so Peter stepped from his tractor, picked up a stick and threw it onto Davis' property. According to Peter, Davis motioned for Nelson to call the police. At some point David arrived brandishing a pipe which he handed to Peter. David and Davis then began discussing the property line. Eventually, the officer arrived at which time Davis ran toward the backhoe and tried to grab the pipe. Peter testified he and Davis were struggling for the pipe when David came to assist Peter. While Peter admitted David somehow ended up on top of Davis, he maintained Davis simply lost his balance and David must have fallen on him. Peter testified David never struck Davis.
 {¶ 9} Finally David DiNunzio testified his first encounter with Davis and Nelson was hostile; specifically, he noticed them walking through his yard, he greeted them and asked if they knew where the property line was and they responded: "I don't give a shit. You can kiss my ass." David detailed various situations where Davis threatened to "kick his ass" and other situations where Davis called him a "fat ass." David also testified that Nelson threatened him with hedge clippers on April 18, 2004. David's testimony regarding the May 11, 2004 encounter was similar to Peter's.
 {¶ 10} At the conclusion of the hearing, the court determined the evidence did not establish a pattern of conduct sufficient to issue a civil stalking protection order on Peter DiNunzio. However, the court did conclude that Davis and Nelson had provided adequate evidence to issue a civil stalking protection order against David DiNunzio. This appeal follows.
 {¶ 11} Appellants assert two assignments of error:
 {¶ 12} "[1.] The trial court erred in issuing a stalking protective order against the respondent Peter DiNunzio.
 {¶ 13} "[2.] The trial court's decision to issue a protective order against the respondent David DiNunzio was not supported by sufficient evidence, and/or is against the manifest weight of the evidence."
 {¶ 14} In their first assignment of error, appellants contend the court erred in sustaining the protection order against Peter.
 {¶ 15} Issuance of a protection order pursuant to R.C. 2903.214
requires the petitioner to establish that the respondent engaged in conduct constituting menacing by stalking. R.C. 2903.214(C)(1). Menacing by stalking is defined as "engaging in a pattern of conduct" which "causes another to believe that the offender will cause serious physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A). A court may grant a stalking civil protection order if the petitioner can demonstrate, by a preponderance of the evidence, the foregoing elements under R.C. 2903.211(A).
 {¶ 16} At the full hearing on the motions, the trial court stated:
 {¶ 17} "In regard — I will start with Peter DiNunzio. The court in that case finds that there has not been established by a preponderance of the evidence that there is a pattern of conduct involving Peter DiNunzio. So the court is not going to issue any orders on Peter DiNunzio."
 {¶ 18} While the Order of Protection does not specifically state the protection order applied against Peter, it does not explicitly exclude him. Rather, both David and Peter are listed as respondents. The order goes on to list the parties to the case who were present at the hearing, including both petitioners and both respondents. Further, the court made the following factual findings in its order without specifying to whom it was referring:
 {¶ 19} "Respondent engaged in a pattern of conduct by not only threatening physical harm, but actually causing physical harm to Charles Davis in addition to repeated instances of annoying and harassing the petitioners which resulted in both Charles Davis and Caren Nelson suffering emotional distress."
 {¶ 20} However, in the same order of protection, the court indicates that in referencing "Respondent," it is referring to David DiNunzio, thus implicitly excluding Peter DiNunzio from the order.
 {¶ 21} It is clear from the record that the court intended the order of protection to apply to David and not Peter. The transcript of the full hearing underscores this conclusion and, although the order exhibits some opacity, we believe it sufficiently excludes Peter from the order. Therefore, we hold the court's order is only applicable to David; accordingly, appellant's first assignment of error is a nullity.
 {¶ 22} In their second assignment of error, appellants challenge the sufficiency and weight of the evidence on which the protection order against David is based. Appellant notes and we acknowledge the surfeit of authority holding the general distinctions pervading weight and sufficiency disappear in the context of civil proceedings. See, Paulusv. Rucker, 11th Dist. No. 2002-P-0080, 2003-Ohio-2816, at ¶ 9; Millerv. Francisco, 11th Dist. No. 2002-L-097, 2003-Ohio-1978, at ¶ 13; see, also, Covey v. Natrual Foods, Inc., 6th Dist. No. L-03-1111, 2004-Ohio-1336, at ¶ 32; Scott v. Chalk, 1st Dist. No. C-010331, 2002-Ohio-1980, at ¶ 6; Lichtenberg Constr. Dev., Inc. v. Paul W.Wilson, Inc. (Sept. 28, 2001), 1st Dist. No. C-000811, 2001 Ohio App. LEXIS 4372, at ¶ 5; Lakeshore Properties, Universal Am-Cam, Ltd. v. Cityof Sharonville (Feb. 16, 2001), 1st Dist. No. C-000321, 2001 Ohio App. LEXIS 543, at ¶ 12.[3] We now reconsider this proposition.
 {¶ 23} While the degree of proof necessary in a civil proceeding is significantly less than that required in a criminal matter, there is no cogent reason why the fundamental logical differences relating to evidential sufficiency and weight cease to exist in a civil context. For example, a plaintiff in a tort or breach of contract action must offer sufficient evidence to establish the elements of his claim by a preponderance of the evidence. A challenge to the evidential sufficiency asks a reviewing court to examine whether the plaintiff met his burden of proof. An analysis of this sort is mechanical in that it requires a court to observe the record and determine whether the plaintiff offered adequate evidence to support the elements of his particular claim.
 {¶ 24} Alternatively, evidential weight involves an analysis of whether the plaintiff met his burden of persuasion. This analysis is more abstract and requires a court to look at the evidence in its totality and engage in a limited weighing exercise for purposes of assessing its credibility. Hence, a plaintiff may present sufficient evidence to meet the elements of his tort or breach claim, yet the greater weight of the credible evidence may still militate against a verdict in his favor.
 {¶ 25} As the distinction between burden of proof and burden of persuasion remains regardless of the character of the proceedings, we hold that the terms weight and sufficiency must be treated independently in both criminal and civil contexts. Our previous holdings conflating these terms are therefore overruled.
 {¶ 26} With this in mind, we shall now address appellant's first assignment of error.
 {¶ 27} At the end of the full hearing, the court determined:
 {¶ 28} "Mr. David DiNunzio did commit a violation of Revised Code 2903.211; that there was a pattern of conduct which made both Ms. Nelson and Mr. Davis believe they were going to suffer physical harm and or [sic] cause them mental distress. Again this is more than just the one incident on May 11th. So the Court obviously relies heavily on the May 11th incident when actually the court finds there was physical harm caused to Charles Davis.
 {¶ 29} "Throughout the time, starting in August of 2003 the court finds that there was a series of incidents involving harassing, annoying, threats, [sic] that were made, that does establish a pattern of conduct. * * *"
 {¶ 30} David argues Davis and Nelson failed to demonstrate a "pattern of conduct" sufficient to meet the requirements of R.C. 2903.211. David points out that Davis testified only to two other incidents where he believed he was going to suffer physical harm and, during his testimony, Davis failed to point to specific dates. Even if such dates were available, David argues that Davis's characterizations were placed in a context which revealed he did not believe he was going to suffer physical harm.
 {¶ 31} With respect to the first incident, Davis testified that "a month" prior to the May 11, 2004 incident, he and David were talking to a police officer regarding a boundary dispute when "David came after me."[4]
Davis indicated that "the Chief or Sergeant or whatever it was had to grab him and take him away and talk to him."
 {¶ 32} Davis further testified that "a week prior" to this incident he was cutting his grass when David drove into the yard admonishing him to "get off his property." Davis testified David swerved toward him in the yard. With respect to this incident, Davis and the DiNunzios' trial counsel had the following exchange on cross-examination:
 {¶ 33} "Q. You didn't believe that he was going to cause you serious physical harm at that time; did you?
 {¶ 34} "A. What are you asking about now? The stakes? The car? The lawn mower?
 {¶ 35} "Q. The car.
 {¶ 36} "A. Did it cause me harm?
 {¶ 37} "Q. No. The officer asked, did you believe that Mr. Davis or that Mr. DiNunzio, David DiNunzio, meant to cause serious bodily harm and you responded no.
 {¶ 38} "A. I don't recall saying no. What I do recall saying was that he swerved the car at the tractor. Pulled up to me and started swearing at me, telling me to get the F off of his property."
 {¶ 39} While Davis did not offer specific dates, he did testify that these prior incidents occurred within approximately one month of the May 11, 2004 incident. As indicated supra, "pattern of conduct" means "two or more actions or incidents closely related in time * * *." R.C.2903.211(D)(1). We believe that the challenged testimony of Davis was sufficient to demonstrate a statutory pattern of conduct. In this respect, David's argument lacks merit.
 {¶ 40} David next alleges that the court erred in relying on Officer Baker's testimony because, in doing so, the court all but nullified the DiNunzios' testimony.
 {¶ 41} The trial court, as the trier of fact, is in the best position to view the witnesses and their demeanor. In analyzing the weight of the evidence, we must indulge every reasonable presumption in favor of the trial court's judgment and factual findings. Tuuri v. Snyder, 11th Dist. No. 2000-G-2325, 202-Ohio-2107, at ¶ 13. Put differently, we may not substitute our judgment for that of the trial court as long as there is some competent credible evidence to support its findings. State ex rel.Celebrezze v. Environmental Enterprises, Inc. (1990), 53 Ohio St.3d 147,154. Thus, if the evidence is reasonably susceptible to more than one interpretation, we shall construe it consistently with the lower court's judgment. Tuuri, supra, at ¶ 14.
 {¶ 42} With respect to the credibility of the testimony it heard, the trial court made the following statement on record:
 {¶ 43} "We have a case here where you have the testimony from two parties which is completely different from each other. One side says it is one way, the other side says it is another way. That's not really unusual in these type of cases.
 {¶ 44} "Fortunately in this case, there was an independent third person also, the police officer, who had an opportunity to observe at least one of the allegations, one of the alleged incidents that occurred here, occurred May 11th. The Court finds that Officer Baker who testified concerning at least an incident on that day, had absolutely no reason to lie, make anything up, corroborate what the Petitioners have to say.
 {¶ 45} "While that only deals with one of the incidents, it also helps the Court determine where the truth perhaps lies on other allegations that have been made."
 {¶ 46} The court essentially determined that Officer Baker's testimony regarding the May 11, 2004 incident was reasonably congruent with the testimony of Davis and Nelson. This finding is consistent with the evidence received at the hearing. Because Davis' and Nelson's testimony regarding the May 11, 2004 events significantly corresponded to the officer's version of events, the court found their overall testimony more credible than the DiNunzios'. We do not think the court abused its discretion in doing so and therefore we will not usurp the factfinder's determination regarding witness credibility.
 {¶ 47} The evidence presented, while not overwhelming, was sufficient to establish by a preponderance of the evidence that appellant's actions caused both Davis and Nelson to believe that David would cause serious physical harm to them as well as mental distress. We additionally believe the trial court's determination was supported by the weight of the evidence. Appellants' second assignment of error is without merit.
 {¶ 48} For the above reasons, the judgment of the Lake County Court of Common Pleas is hereby affirmed.
Donald R. Ford, P.J., concurs, Diane v. Grendell, J., concurs in judgment only.
[1] The officer testified that Peter DiNunzio was sitting on the backhoe when he arrived.
[2] Davis testified that, at the time of the hearing, he was recovering from cancer; at the time of the hearing, Davis stated he was 6'1 and weighed 185 lbs. Davis indicated that David was a lot bigger than him. Although David did not disclose his precise size, he stated he was 5'8; the protection order listed David's weight at 250+.
[3] In State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, this court reviewed the distinctions between the standards applied when reviewing criminal cases on evidential weight and sufficiency. Further, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, the Ohio Supreme Court underscored these distinctions and explained that the concepts of weight and sufficiency are qualitatively and quantitatively different. While this distinction has been recognized in a criminal context since Thompkins, courts have failed to make the same analytical separation in the civil context. The authority cited for this peculiar conceptual fusion was announced in C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279. In C.E. Morris Co., the Supreme Court of Ohio stated: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. at syllabus. In our view, this standard is not inconsistent with the rules announced in Thompkins. However, certain appellate courts have interpreted this standard to mirror the standard of review for sufficiency of the evidence set forth in Thompkins. See, e.g.Lakeshore Properties, supra, at 12, citing Reed v. Key-Chrysler Plymouth
(1998), 125 Ohio App.3d 437, 440; Siegal v. Magic Carpet Upholstery (Aug. 12, 1999), 8th Dist. No. 74645, 1999 Ohio App. LEXIS 3733. In our view, such an interpretation is invalid. To the extent that the C.E. Morris Co. standard requires an analysis of evidential credibility it presupposes a weighing exercise. It is therefore analytically different from a sufficiency analysis. To wit, Thompkins
states "sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id. at 386; see, also, Schlee, supra, (holding "The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." Id. at 13). A court analyzing the sufficiency of the evidence does not engage in a weighing of evidential credibility and therefore the concepts of weight and sufficiency are analytically separate regardless of whether the court is reviewing a criminal or a civil matter.
[4] While David DiNunzio correctly notes that Davis followed this comment with "he just reached for me[,]" the distinction between "coming after" and "reaching" is inconsequential for purposes of our review. The upshot is whether the conduct caused Davis to believe David DiNunzio would cause him serious physical harm or mental distress. Davis did so testify he feared both DiNunzios and the continuous, hostile encounters had caused him mental stress.