[Cite as *Saez Assoc., Inc. v. Global Reader Servs., Inc.*, 2011-Ohio-5185.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96555**

## SAEZ ASSOCIATES, INC.

PLAINTIFF-APPELLEE

vs.

## GLOBAL READER SERVICES, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-728988

**BEFORE:**   Blackmon, J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**      October 6, 2011

**ATTORNEY FOR APPELLANTS**

R. Michael O'Neal
20521 Chagrin Blvd.
Suite E
Shaker Heights, Ohio 44122


**ATTORNEYS FOR APPELLEE**

Robert B. Weltman
David S. Brown
Weltman, Weinberg & Reis Co., L.P.A.
Lakeside Place, Suite 200
323 W. Lakeside Avenue
Cleveland, Ohio 44113


PATRICIA ANN BLACKMON, J.:

{¶ 1} In this accelerated appeal, appellants Global Reader Services, Inc. ("Global"), Displays Plus, Inc. ("Displays"), and Andrew Lachowicz ("Lachowicz") appeal the trial court's granting of summary judgment in favor of appellee Saez Associates, Inc. ("Saez") and assign the following error for our review:

{¶ 2} **"I. Whether the trial court erred in granting plaintiff's motion for summary judgment where the evidence shows there are genuine issues of material fact upon which reasonable minds can differ."**

**{¶ 3}** Having reviewed the facts and relevant law, we reverse the trial court's decision and remand for further proceedings consistent with this court's opinion. The apposite facts follow.

## Facts

**{¶ 4}** Lachowicz was the director, president, and sole shareholder of Global and Displays. Global was a telemarketing company and Displays was in the business of installing cabinets. Displays entered into a joint venture with Saez where Saez would bid on jobs on behalf of Displays. Once a contract was awarded to Displays, it would pay Saez a commission.

**{¶ 5}** On November 13, 2007, Saez submitted a proposal to Tompkins Builders for a cabinet project. Saez claims that Tompkins awarded the contract to Displays in the amount of $420,000; therefore, Displays owed Saez a commission in the amount of $46,585.39. Displays failed to pay the commission; therefore, Saez brought an action in Florida for the payment. Default judgment was entered against Displays.

**{¶ 6}** On June 10, 2010, Saez filed a complaint in the Cuyahoga County Common Pleas court seeking to set aside Displays' transfer of $50,000 to Global on February 26, 2007; Saez contended the transfer was fraudulent. Saez filed a motion for summary judgment that was opposed by Displays. The trial court granted summary judgment in favor of Saez after concluding "five badges of fraud" pursuant to R.C. 1336.04(B) existed.

## Motion for Summary Judgment

**{¶ 7}** In its sole assigned error, Displays argues that the trial court erred by granting summary judgment in favor of Saez. Specifically, Displays argues there was no evidence it had the intent to defraud Saez as required under R.C. 1336.04.

**{¶ 8}** We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 746 N.E.2d 618, citing *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 506 N.E.2d 212; *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 699 N.E.2d 534. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion that is adverse to the non-moving party.

**{¶ 9}** R.C. 1336.04 allows a creditor two ways to establish a claim for fraudulent transfers. First, R.C. 1336.04(A)(1) requires a showing that the debtor had an actual intent to commit fraud in the transfer of an asset. It states:

> **"(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:**
>
> **"(1) With actual intent to hinder, delay, or defraud any creditor of the debtor * * *."**

**{¶ 10}** Thus, pursuant to R.C. 1336.04(A)(1), a creditor must show: (1) a conveyance or incurring of a debt; (2) made with actual intent to defraud, hinder, or delay; (3) present or future creditors. *John Deere Indus. Equip. Co. v. Gentile* (1983), 9 Ohio App.3d 251, 254, 459 N.E.2d 611; *BancOhio Natl. Bank v. Nursing Ctr. Svcs., Inc.* (1988), 61 Ohio App.3d 711, 715, 573 N.E.2d 1122.

**{¶ 11}** Saez has established the first   element of R.C. 1336.04(A)(1): Displays has never disputed that it transferred $50,000 to Global.   However, the parties strongly dispute the element of intent.   Saez argues that Displays transferred the money with the intent to avoid paying Saez's commission; Displays asserts that the transferred money was to pay a debt owed to Global.

**{¶ 12}** While the creditor seeking to set aside a transfer as fraudulent has the ultimate burden of proving, by clear and convincing evidence, the debtor's intent pursuant to R.C. 1336.04(A)(1), Ohio has recognized that proof of actual intent will often be impossible to show. *Wagner v. Galipo* (1994), 97 Ohio App.3d 302, 309, 646 N.E.2d 844, citing *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 480 N.E.2d 1121.   Thus, direct evidence of fraudulent intent is not essential.   Id.   A creditor may still establish a debtor's actual fraudulent intent if the circumstances demonstrate "badges of fraud." Originally sounding in common law, the traditional "badges of fraud" that accompany actual fraudulent intent are now statutorily defined pursuant to R.C. 1336.04(B) as follows:

**"(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:**

**"(1) Whether the transfer or obligation was to an insider;**

**"(2) Whether the debtor retained possession or control of the property transferred after the transfer;**

**"(3) Whether the transfer or obligation was disclosed or concealed;**

**"(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;**

**"(5) Whether the transfer was of substantially all of the assets of the debtor;**

**"(6) Whether the debtor absconded;**

**"(7) Whether the debtor removed or concealed assets;**

**"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;**

**"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;**

**"(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;**

**"(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."**

{¶ 13} Whether fraudulent intent exists is to be determined based upon the facts and circumstances of each case. *Stein* at 308. If the party alleging fraud is able to demonstrate a sufficient number of "badges," an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent. *Baker &*

*Sons Equip. Co. v. GSO Equip. Leasing, Inc.* (1993), 87 Ohio App.3d 644, 650, 622 N.E.2d 1113; *Aristocrat Lakewood Nursing Home v. Mayne* (1999), 133 Ohio App.3d 651, 662, 729 N.E.2d 768; *Abood v. Nemer* (1998), 128 Ohio App.3d 151, 713 N.E.2d 1151. While the existence of one or more badges does not constitute fraud per se, a complaining party is not required to demonstrate the presence of all badges of fraud. *Baker & Sons* at 650. As few as three badges have been held to constitute clear and convincing evidence of actual fraudulent intent. *Bank One, N.A. v. Plaza E.* (Nov. 10, 1997), 10th Dist. No. 97APE02-184. But, see, *Crocker v. Hood* (1996), 113 Ohio App.3d 478, 681 N.E.2d 460 (plaintiff could not prevail where only two badges of fraud existed). Ultimately, the party asserting fraud must carry the final burden of proof. *Baker & Sons* at 651, citing *McKinley Fed. S. & L. v. Pizzuro Ents., Inc.* (1990), 65 Ohio App.3d 791, 585 N.E.2d 496.

{¶ 14} In the instant case, the trial court found that Displays' conveyance of the $50,000 to Global constituted a fraudulent conveyance. In doing so, the trial court concluded five badges of fraud were present: 1) the transfer was to an insider; 2) the debtor retained possession or control of the money after the transfer; 3) the transfer constituted substantially all of Displays' assets; 4) the debtor became insolvent shortly after the debt was incurred; and, 5) the transfer occurred shortly before or after the debt was incurred.

{¶ 15} Displays disputes four of the above badges as it concedes that the transfer was to an insider because Lachowicz was the controlling shareholder, director and

operating officer of both Displays and Global. We agree with Lachowicz that the transfer to an insider is undisputed. Additionally, the fact that Lachowicz was the sole shareholder of both Displays and Global shows that Lachowicz maintained control over the money. However, de novo review of the record shows that there are genuine issues of material fact regarding the remaining three badges of fraud.

{¶ 16} The trial court concluded that the transfer of the $50,000 resulted in Displays becoming insolvent or constituted the majority of its assets, or that Displays became insolvent shortly after the transfer. To prove this badge, Saez presented evidence of multiple lawsuits that were filed against Displays between May 2007 and February 2008. We agree that "a debtor who generally is not paying his debts as they become due is presumed to be insolvent." R.C. 1336.02(A)(2). Here, however, the lawsuits do not definitively prove that Displays was insolvent. While several of the lawsuits were for nonpayment of debts, several of the lawsuits concerned breach of contract claims for Displays' failure to perform, not failure to pay a debt. Displays also filed answers in several of the suits contesting the claims. Moreover, the mere fact that complaints were filed means nothing unless a judgment was rendered in favor of the alleged creditors. The only evidence of the result of the suits was a copy of the docket in several suits indicating judgment was entered in the total amount of $30,500.40, and a consent judgment was agreed to in the amount of $3,076.00.

{¶ 17} Displays rebutted Saez's claim that it was insolvent by attaching to its motion in opposition a copy of its bank statement that revealed that after it transferred the

$50,000 to Global, Displays still possessed $242,252.52 in its bank account, which was more than sufficient to pay the amount of the judgments awarded in the lawsuits. No evidence was presented whether the other cases resulted in judgments in larger amounts. Thus, we conclude the bank statement at least creates a genuine issue of fact whether Displays was insolvent at the time of transfer or became insolvent shortly thereafter.

{¶ 18} There is also an issue of fact regarding whether the transfer occurred shortly before or after the debt was incurred. Displays argues that it did not owe Saez the commission because it ultimately did not enter into a contract with Tompkins. Whether Saez was entitled to the commission is not before us because Saez obtained a default judgment on its claim in the Florida court.

{¶ 19} We do agree, however, there is an issue of fact in dispute regarding whether Displays owed Saez the commission at the time it transferred the $50,000. The evidence indicated that Saez presented a bid to Tompkins on January 31, 2007. Displays transferred the funds to Global on February 26, 2007. Tompkins did not offer Displays the contract until April 17, 2007, almost two months after the transfer. Whether Displays was aware the contract was forthcoming or not is not in evidence.

{¶ 20} Additionally, once a creditor has met his burden of proving badges of fraud, the debtor may rebut the presumption of fraud by presenting evidence that it received reasonably equivalent value for the assets transferred. *Baker & Sons* at 651 ("the giving of reasonably equivalent value in the transaction is a 'defense' to a prima facie case of actual intent to defraud."); *Atlantic Veneer Corp. v. Robbins*, 4th Dist. No. 01CA768,

2002-Ohio-5363 ("once a creditor has met his burden of proving badges of fraud, the debtor may rebut the presumption of fraud by presenting evidence that it received reasonably equivalent value for the assets transferred.").

{¶ 21} Displays' transfer of $50,000 to Global was for payment on a debt of equivalent value. The evidence indicated that on June 5, 2006, Global loaned $50,000 to Displays as a start-up fund. Displays transferred the equivalent amount back to Global on February 27, 2007. Notably, Displays had over $240,000 in its account after transferring the amount, but only transferred the amount of the loan to Global. Therefore, there was evidence that the amount transferred was for a debt in an equivalent amount, which rebuts the presumption of fraud.

{¶ 22} Under these circumstances, we conclude there were genuine issues of fact whether Displays intended to defraud Saez by transferring the $50,000 to Global. Saez relies on our case in *McKinley Fed. S. & L. v. Pizzuro Ent., Inc.* to support its argument that a fraudulent conveyance is proven when the conveyance is between insiders, the insiders retain control of the property, and the defendant was suffering from financial stress, all of which it claims was proven in the instant case. Importantly, however, *McKinley* involved a trial not a motion for summary judgment where it is unclear whether the debt was due at the time of the transfer and whether and when the company became insolvent thereafter. Therefore, the trial court's granting of summary judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR