[Cite as *Concord Village Skilled Nursing & Rehab., Ltd. v. Lundquist*, 2025-Ohio-5097.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| CONCORD VILLAGE SKILLED NURSING & REHABILITATION, LTD., | CASE NO. 2025-L-033 |
| Plaintiff-Appellant, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| HELEN LUNDQUIST, et al., | Trial Court No. 2024 CV 000083 |
| Defendants, | |
| TERRANCE TABACZYNSKI INDIVIDUALLY AND AS ATTORNEY IN FACT FOR HELEN LUNDQUIST, | |
| Defendant-Appellee. | |

## OPINION AND JUDGMENT ENTRY

Decided: November 10, 2025
Judgment: Affirmed

*Geoffrey E. Webster*, Webster Law Offices Co., L.P.A, 17 South High Street, Suite 770, Columbus, OH 43215, and *Andrew L. Francis*, VRC Management, Inc., 405 Tallmadge Road #135, Cuyahoga Falls, OH 44333 (For Plaintiff-Appellant).

*Cory R. Hinton*, Hanahan & Hinton, L.L.C, 7351 Center Street, Suite 1, Mentor, OH 44060 (For Defendant-Appellee).

ROBERT J. PATTON, P.J.

{¶1} Plaintiff-appellant, Concord Village Skilled Nursing & Rehabilitation Ltd. ("Concord Village"), appeals from the trial court's decision on cross motions for summary judgment. Concord Village filed a partial motion for summary judgment against

defendants, Helen Lundquist ("Lundquist") and Terrance Tabaczynski, defendant-appellee, ("Tabaczynski"). The trial court granted Concord Village's partial motion for summary judgment on its breach of contract claim against Lundquist and denied the motion as to the remaining claims. Conversely, the trial court granted the partial motion for summary judgment filed by Lundquist and Tabaczynski on the fraudulent transfer claims against both parties, and on all other claims against Tabaczynski. Concord Village appeals from that decision. For the following reasons, we affirm.

{¶2} On appeal, Concord Village assigns error solely to the trial court's decision on the claims against Tabaczynski. Concord Village first asserts that the trial court erred when it failed to consider federal law, regulations, and provisions. Specifically, Concord Village avers that the trial court erred by failing to recognize the applicability of 42 C.F.R. 483.15 which sets forth requirements for states and long-term care facilities. A similar provision is included in the Ohio Administrative Code. Adm.Code 5160-3-02(C)(4). These provisions permit Concord Village to seek a contract with Tabaczynski, who has access to Lundquist's accounts, to pay Lundquist's debt. The provisions do not permit Concord Village to hold Tabaczynski personally liable for the debt.

{¶3} Upon review, there is nothing in the record to establish or indicate that Tabaczynski was responsible for the debt incurred by Lundquist. Tabaczynski was not a party to the initial contract and owed no duty to Concord to pay Lundquist's expenses. As such, the provisions are inapplicable. Therefore, the trial court did not err when it granted summary judgment in favor of Tabaczynski on the negligence claim.

{¶4} Concord Village next asserts that the trial court erred when it granted summary judgment in favor of Tabaczynski on the fraudulent transfer claim. Specifically,

Case No. 2025-L-033

Concord Village contends that the trial court: 1) erred in finding Lundquist was not insolvent; 2) improperly weighed evidence on summary judgment; 3) erred in concluding that Tabaczynski's conduct was not a fraudulent transfer; and 4) misapplied Ohio's Uniform Power of Attorney Act.

{¶5} Lundquist and Tabaczynski did not address the entirety of the fraudulent transfer claim in their joint motion for summary judgment. Accordingly, Lundquist's and Tabaczynski's partial motion for summary judgment was insufficient to show that Lundquist and Tabaczynski were entitled to relief, as a matter of law, on the fraudulent transfer claim as they failed to discuss the transfer of funds from the joint account. However, upon review of the record, including Concord Village's partial motion for summary judgment, we find that all relevant evidence was before the trial court and no genuine issue as to any material fact existed. As such, the non-moving party, Tabaczynski, was entitled to judgment as a matter of law. *Todd Dev. Co., Inc. v. Morgan*, 2008-Ohio-87, ¶ 16, quoting *State ex rel. J.J. Detweiler Ents., Inc. v. Warner*, 2004-Ohio-4659, ¶ 13, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986).

{¶6} We further conclude that the trial court did not err when it determined that Lundquist was not insolvent for purposes of R.C. 1336.04 and R.C. 1336.05. Lundquist retained interest in her residence and had equal authority to access the funds in the joint bank account. Thus, Lundquist was not insolvent.

{¶7} Finally, we conclude that the trial court neither improperly weighed the evidence submitted on summary judgment nor misapplied Ohio's Power of Attorney Act. As power of attorney for Lundquist, Tabaczynski had a duty to Lundquist to fulfill his duties

under the act. Lundquist did not raise any allegations that Tabaczynski did not fulfill his duty as her power of attorney. Further, there was no evidence that the transfers or withdrawals Tabaczynski made from the joint bank account were made pursuant to his authority as Lundquist's power of attorney. As such, summary judgment in favor of Tabaczynski was appropriate on the fraudulent transfer claim.

{¶8} Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural Facts**

{¶9} On or about March 23, 2022, Concord Village, a long-term care facility, and Lundquist entered into a written agreement ("Agreement") for Lundquist's admission as a resident. The Agreement was for services that included room, board, certain health services, and materials incidental to services in exchange for payment of $325.00 per day. Lundquist was a resident of Concord Village from March 23, 2022, to December 10, 2022. Lundquist was the only individual who signed the Agreement. Lundquist's son, Tabaczynski, did not sign the Agreement. Prior to entering into the Agreement, Lundquist had executed a limited power of attorney to Tabaczynski. Less than six months after entering the Agreement, Lundquist also executed a Transfer On Death Designation Affidavit ("TOD") for her residence and a Durable Power of Attorney ("POA") to Tabaczynski. Lundquist and Tabaczynski also shared a joint bank account.

{¶10} At some point during Lundquist's stay at Concord Village, Medicare declined to cover services. Under the agreement, Lundquist agreed to pay for any expenses that were not covered by Medicare or another payee. Lundquist then failed to make payments as required. Concord Village subsequently filed a notice to discharge

Lundquist for nonpayment. Lundquist and Tabaczynski requested an administrative hearing to contest the proposed discharge with the Ohio Department of Health. Attorney Erik Walter ("Atty. Walter") acted as counsel for both Tabaczynski and Lundquist during the hearing. The Ohio Department of Health granted Concord Village's request to discharge Lundquist for nonpayment. The hearing officer determined:

> It is abundantly clear that the Resident's bill has not been paid and no arrangements have been made to pay the bill after numerous attempts by the Facility management to obtain payment from this family. Therefore, the Facility has more than met its burden of proof entitling it to discharge the Resident for failure to pay or to provide a payor source. It is this Hearing Officer's conclusion that the Facility met its burden of proof and it is entitled to discharge the Resident from the Facility pursuant to R.C. §3721.13(A)(30)(e).

{¶11} Tabaczynski and Lundquist appealed the decision of the Ohio Department of Health to the Lake County Court of Common Pleas on October 14, 2022. Atty. Walter represented both Tabaczynski and Lundquist on appeal. That appeal was dismissed without prejudice on March 7, 2023.

{¶12} On January 19, 2024, Concord Village filed a complaint against Lundquist, Tabaczynski, Atty. Walter, and unknown parties. The complaint sought payment of $66,627.23 for services rendered, plus additional amounts as proven, pre-judgment interest, post-judgment interest, punitive damages, attorney fees and costs. The complaint alleged four claims against Lundquist: breach of contract, account, quantum meruit, and fraudulent transfer. The complaint alleged five claims against Tabaczynski: account, quantum meruit, negligence, fraudulent transfer, and fraud. The complaint contained two claims against Atty. Walter: fraud and fraudulent transfer. Additionally, the complaint sought an accounting from all defendants.

{¶13}   On March 20, 2024, Atty. Walter filed a motion to dismiss the claims against him pursuant to Civ.R. 12(b)(6). In his motion, Atty. Walter asserted that he was immune from liability as Concord Village's claims arose from his conduct in his capacity as an attorney for Lundquist and Tabaczynski. Concord Village opposed Atty. Walter's motion. On April 5, 2024, the trial court granted the motion and dismissed the claims against Atty. Walter.

{¶14}   On June 4, 2024, Concord Village filed a motion for leave to file an amended complaint. Concord Village sought to include a claim pursuant R.C. 1337.092. On June 6, 2024, the trial court granted Concord Village's motion for leave to file its amended complaint except for any claims against Atty. Walter, as those claims were previously dismissed with prejudice. The trial court gave Concord Village ten days to add the new claim. There is no indication in the record that Concord Village filed the amended complaint.

{¶15}   On December 13, 2024, Lundquist and Tabaczynski filed a joint motion for partial summary judgment. The motion sought a determination in favor of Lundquist on Concord Village's fraudulent transfer and accounting claims. The motion did not address Concord Village's claims of breach of contract, on account, or quantum meruit as alleged against Lundquist. The joint motion for partial summary judgment also sought a determination in favor of Tabaczynski on all of the claims against him: on account, quantum meruit, negligence, fraudulent transfer, fraud, and accounting.

{¶16}   On December 18, 2024, Concord Village also filed a partial motion for summary judgment. In Concord Village's motion, Concord Village sought a judgment in

its favor on the claims of breach of contract and fraudulent transfer against Lundquist and on the negligence and fraudulent transfer claims against Tabaczynski.

{¶17}  On February 24, 2025, the trial court granted Concord Village's motion for partial summary judgment in part. Specifically, the trial court found Concord Village was entitled to summary judgment on its breach of contract claim against Lundquist. The trial court also determined that the claims against Lundquist for on account and quantum meruit were precluded by the trial court's finding in favor of Concord Village on the breach of contract claim.  The trial court granted Tabaczynski and Lundquist's partial motion for summary judgment as to the fraudulent transfer and accounting claims brought against them. The trial court also granted summary judgment in favor of Tabaczynski on all remaining claims alleged by Concord Village in its complaint.

{¶18}  Concord Village now appeals from the trial court's decision on summary judgment in favor of Tabaczynski.

**The Appeal**

{¶19}  Concord Village raises five assignments of error for review:

[1]. The trial court erred in holding it is "not bound by, has not considered, case law from federal courts." Dkt#159, Jdmt. Entry ftnt. 6.

[2]. The lower court erred in finding Helen Lundquist was not insolvent during the relevant time period. Dkt#159 Jdmt. Entry, p.4.

[3]. The lower court erred in weighing the evidence presented by the parties' summary judgment motions. Dkt#159, Jdmt. Entry Seriatim.

[4]. The trial court erred in failing to find Appellee's conduct was a fraudulent transfer in violation of R.Ch.1336. Dkt.#159, Jdmt. Entry pgs. 3-5.

Case No. 2025-L-033

[5]. The lower court erred in its construction and application of Ohio's Uniform Power of Attorney Act R.C. 1337, in particular R.C. 1337.34. Dkt#159, Jdmt. Entry, p. 5.

## Summary Judgment

{¶20} We review a trial court's decision to grant summary judgment under a de novo standard of review. *McFadden v. Discerni*, 2023-Ohio-1086, ¶ 12 (11th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 2011-Ohio-5439, ¶ 27 (11th Dist.).

{¶21} However, a reviewing court will not consider issues raised in summary judgment proceedings that the trial court failed to rule on in the proceedings below. *Tree of Life Church v. Agnew*, 2014-Ohio-878, ¶ 27 (7th Dist.), citing *Conny Farms, Ltd. v. Ball Resources, Inc.*, 2011-Ohio-5472, ¶ 15 (7th Dist.).

{¶22} Civ.R. 56, which governs summary judgment proceedings, provides in relevant part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Case No. 2025-L-033

{¶23} "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). *McCruter v. Travelers Home & Marine Ins. Co.*, 2021-Ohio-472, ¶ 43 (11th Dist.), citing *Welch v. Ziccarelli*, 2007-Ohio-4374, ¶ 36 (11th Dist.). "In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party." *Id.*

{¶24} This court recognized in *Ziccarelli*, 2007-Ohio-4374:

> Since summary judgment denies the party his or her "day in court" it is not to be viewed lightly as docket control or as a "little trial." The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt*, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56 that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Misteff v. Wheeler* (1988), 38 Ohio St.3d 112.

*Ziccarelli* at ¶ 40. Accordingly, this court has set forth the burden-shifting procedures and standards for the moving and non-moving parties under Civ.R. 56.

Case No. 2025-L-033

{¶25} "The Supreme Court of Ohio has held that Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party." *Shamrock v. Cobra Resources*, LLC, 2022-Ohio-1998, ¶ 96 (11th Dist.), citing *Todd Dev. Co. v. Morgan*, 2008-Ohio-87, ¶ 15. However, the Supreme Court of Ohio has also recognized an exception to this general rule. "'"[A]n entry of summary judgment against the moving party does not prejudice his due process rights where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law."'" *Morgan*, 2008-Ohio-87 at ¶ 16, quoting *State ex rel. J.J. Detweiler Ents., Inc. v. Warner*, 2004-Ohio-4659, ¶ 13, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986). This exception "applies in 'factual situations in which the court has all the relevant evidence before it and the summary judgment standard is met.'" *Shamrock* at ¶ 98, quoting *Morgan* at ¶ 17. "The reason for this exception is that the parties have had an opportunity to submit all evidence to the court, and the parties have notice that the court is considering summary judgment. As a result, neither party's due process rights are violated." *Morgan* at ¶ 17.

{¶26} On the other hand, this court has held "that it is reversible error for a trial court to sua sponte grant summary judgment premised on issues not raised by the parties." *Id*., quoting *Mannion v. Lake Hosp. Sys., Inc.*, 2016-Ohio-8428, ¶ 22 (11th Dist.). A trial court does not err by granting a motion for summary judgment in favor of a non-moving party when all relevant evidence is before the court and the non-moving party is entitled to judgment as a matter of law.

**Negligence Claim Against Tabacyznski**

{¶27} In its first assignment of error, Concord Village asserts that the trial court erred in stating that it is "not bound by, has not considered, case law from federal courts." Specifically, Concord Village alleges that the lower court ignored federal case law as well as federal statutes and regulations that "directly relate to the subject of this action, as well as federal courts' interpretation of law."

{¶28} In a footnote in its judgment entry on summary judgment, the trial court stated that it did not consider case law from federal courts. The statement was related to Concord Village's negligence claim against Tabaczynski. The trial court noted that Concord Village failed to cite any Ohio case law which supports the position that an attorney in fact, who did not sign the initial agreement, could be held personally responsible for a debt incurred in the absence of a subsequent agreement or ancillary document.

{¶29} "In order to recover on a negligence claim, a plaintiff must prove that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury." *Fonderlin v. Trumbull Family Fitness*, 2023-Ohio-767, ¶ 22 (11th Dist.), citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565 (1998). In other words, to succeed on this claim, Concord Village had to show that there was no genuine issue of material fact that Tabaczynski breached a duty owed to Concord Village and that the breach caused Concord Village's injury.

{¶30} Concord Village argues that the trial court ignored 42 C.F.R. 483.15, which sets forth requirements for states and long-term care facilities. Specifically, 42 C.F.R. 483.15(a)(3) provides:

Case No. 2025-L-033

The facility must not request or require a third-party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility *may* request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the resident's income or resources.

{¶31} A similar provision is included in the Ohio Administrative Code. Adm.Code 5160-3-02(C)(4):

A provider of a [Nursing Facility] shall not:

. . .

(4) Require a third party to accept personal responsibility for paying the facility charges out of his or her own funds. However, the facility may require a representative who has legal access to an individual's income or resources available to pay for facility care to sign a contract, without incurring personal financial liability, to provide facility payment from the individual's income or resources if the individual's medicaid application is denied and if the individual's cost of care is not being paid by medicare or another third-party payor . . . The prohibition against third-party guarantees applies to all individuals and prospective individuals in all certified [Nursing Facilities] regardless of payment source. This provision does not prohibit a third party from voluntarily making payment on behalf of an individual.

{¶32} These provisions permit Concord Village to require Tabaczynski to sign a contract to provide facility payment from Lundquist's income or resources if Lundquist's Medicaid or Medicare application was denied and if her cost of care was not being paid by Medicaid, Medicare, or another third-party payor. Nothing in the provision permits Concord Village, absent a contract with Tabaczynski, to demand that Tabaczynski pay the debts of Lundquist. Further, the provision does not permit Concord Village to hold Tabaczynski personally liable for the debt.

Case No. 2025-L-033

{¶33} Recently, the Twelfth District Court of Appeals recognized:

> In sum, neither federal nor Ohio law bars nursing homes from enforcing focused resource-management obligations like those contained in the admission agreement here. While Douglas cannot be compelled to guarantee Joan's care from his personal funds, he remains accountable for his failure to manage her resources as promised. This framework advances the dual objectives of protecting families from guarantor obligations while ensuring nursing homes can secure payment from legitimate resident resources through proper financial management.

*Otterbein Maineville, LLC v. Carman*, 2025-Ohio-1013, ¶ 44-46 (12th Dist.).

{¶34} In *Carman*, a long-term care facility sued Joan, a resident, and the resident's son, Douglas. Douglas, signed the admission agreement as the resident's representative. The agreement contained a promise that Douglas would manage the resident's resources. The Twelfth Appellate District recognized that:

> The admission agreement establishes two distinct roles for Douglas: fiduciary for Joan and individual signatory for himself. As "Representative," Douglas made specific commitments about managing Joan's resources—commitments that, by their nature and the Agreement's structure, he undertook in his individual capacity. That Douglas held power of attorney for Joan does not alter this fundamental arrangement. Indeed, the Agreement's careful drafting illuminates the distinction: while explicitly disclaiming Douglas's personal guarantee of payment, it simultaneously binds him to specific resource-management obligations . . . [T]he Agreement unambiguously bound Douglas, as "Representative," to specific promises about managing Joan's resources. His subsequent decision to redirect sale proceeds to a trust breached these promises, regardless of his power-of-attorney status.

*Id.*, at ¶ 84. This case turned on Douglas's promise to manage Joan's resources in such a manner to pay her facility bills.

Case No. 2025-L-033

{¶35}   Unlike Douglas in *Carman,* here, there is no evidence in the record that Tabaczynski made any similar promise to Concord Village.  It is undisputed that Lundquist signed the Agreement with Concord Village. Indeed, the assignment of benefits contained in the Agreement provided that should payment for services not be made by Medicare, "the entire amount will be considered due and payable to" Concord Village by Lundquist. As such, the only individual with a duty to pay Concord Village was Lundquist.

{¶36} As Tabaczynski did not sign the Agreement in either his individual capacity or as power of attorney/attorney in fact, Tabaczynski did not have a duty to Concord Village to pay any debts. As such, Concord Village's negligence claim could not succeed.

{¶37}   Concord Village cited to no authority, federal or otherwise, to support its position that the trial court failed to apply 42 C.F.R. 483.15 below. As Tabaczynski had no duty to pay Lundquist's debt and owed no duty to Concord Village absent a contract, no genuine issue of material fact existed on Concord Village's negligence claim. Thus, Tabaczynski was entitled to judgment as a matter of law. Accordingly, the trial court did not err when it granted summary judgment in favor of Tabaczynski on Concord Village's negligence claim.

{¶38}   Concord Village's first assignment of error is without merit.

**Fraudulent Transfer Claim**

{¶39}   Concord Village's remaining assignments of error relate to the trial court's decision granting summary judgment in favor of Tabaczynski on the fraudulent transfer claim. We address assignments of error two and four together.

Case No. 2025-L-033

{¶40} Concord Village argues that the trial court erred in finding that Lundquist was not insolvent and erred in failing to find the conduct of Tabaczynski a fraudulent transfer. Specifically, Concord Village asserts that Lundquist's execution of a TOD of her residence to Tabaczynski and Tabaczynski's withdrawals from the joint bank account amounted to a fraudulent transfer. We disagree.

{¶41} R.C. 1336.04(A) provides:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1)   With actual intent to hinder, delay, or defraud any creditor of the debtor;
>
> (2)   Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
>
>> (a)   The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
>>
>> (b)   The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

{¶42} "Debtor" is defined as "a person who is liable on a claim." R.C. 1336.01(F). Based upon the Agreement, Lundquist is the debtor. To succeed on a claim of fraudulent transfer pursuant to R.C. 1336.04(A)(1), a plaintiff must prove: "(1) the transfer of an asset or the incurrence of a new debt; (2) done with actual intent to defraud, hinder, or delay;

and (3) present or future creditors." *Fade v. Morris*, 2015-Ohio-5337, ¶ 28-29 (11th Dist.), citing *Brown Bark II, L.P. v. Coakley*, 2010-Ohio-3023, ¶ 10 (10th Dist.).

{¶43}   When determining actual intent to hinder, delay, or defraud a creditor of the debtor, consideration may be given to all relevant factors as set forth in R.C. 1336.04(B), including, but not limited to, the following:

(1)     Whether the transfer or obligation was to an insider;

(2)     Whether the debtor retained possession or control of the property transferred after the transfer;

(3)     Whether the transfer or obligation was disclosed or concealed;

(4)     Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5)     Whether the transfer was of substantially all of the assets of the debtor;

(6)     Whether the debtor absconded;

(7)     Whether the debtor removed or concealed assets;

(8)     Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)     Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)    Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11)    Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

{¶44}   Additionally, R.C. 1336.05 provides:

(A)     A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(B)     A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

{¶45}   With respect to recovery on a claim, R.C. 1336.08(B)(1) provides that "the creditor . . . may recover a judgment for the value of the asset transferred . . . or the amount necessary to satisfy the claim of the creditor . . . whichever is less." The judgment may be entered against either of the following:

(a)     The first transferee of the asset or the person for whose benefit the transfer was made;

(b) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

R.C. 1336.08(B)(1); *Hanamura-Valashinas v. Transitions by Firenza, LLC*, 2020-Ohio-4887, ¶ 30-31 (11th Dist.).

{¶46}   There are several facts a plaintiff must establish to succeed on a claim under R.C. 1336.04 or 1336.05. "'[A] creditor must prove that the debtor was insolvent or would be made so by the transfer in issue and that the transfer was made without fair consideration. If both of these burdens are met, the transfer is fraudulent as a matter of law. Neither the intent of the debtor nor the knowledge of the transferee need be proven.'" *Colonial Guild Ltd. v. Pruitt*, 2001 WL 324377, *4 (9th Dist. Apr. 4, 2001), quoting *Sease*

Case No. 2025-L-033

*v. John Smith Grain Co.*, 17 Ohio App.3d 223, 225 (2d Dist. Apr. 3, 1984). "A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation." R.C. 1336.02(A)(1).

{¶47} Both parties agreed that Lundquist and Tabaczynski shared a joint bank account with a balance of over $60,000 at the time the motion for summary judgment was filed. It is also clear from the record that Lundquist had fee simple title to her residence. Therefore, the sum of the debts was not greater that all the assets of the debtor and R.C. 1336.02(A)(1) is inapplicable.

{¶48} R.C. 1336.02(A)(2) provides: "A debtor who generally is not paying his debts as they become due is presumed to be insolvent." However, this presumption may be rebutted. *Atlantic Veneer Corp. v. Robbins*, 2002-Ohio-5363, ¶ 41 (4th Dist.).

{¶49} Concord Village asserts that Lundquist transferred all authority and control over her assets to Tabaczynski by executing the POA. Concord Village also alleges that the TOD supports the position that Lundquist transferred all of her assets to Tabaczynski. Concord Village argues that such transfers rendered Lundquist insolvent. We disagree.

{¶50} While the executed POA granted Tabaczynski the authority to, among other things, make decisions regarding personal and real property, and to make withdraws and deposits, the POA did not transfer any ownership rights from Lundquist to Tabaczynski. The POA did not create any obligation for Tabaczynski to act on Lundquist's behalf. Furthermore, the POA specifically provided for the revocation of the POA and contemplated the appointment of others with additional and similar powers of attorney. The POA does not prohibit Lundquist from acting or performing any of the authorized

duties contained in the POA on her own behalf. Thus, the execution of the POA was not a transfer for purposes of R.C. 1336.04 or R.C. 1336.05.

{¶51} We next address Concord Village's claim regarding the execution of the TOD for Lundquist's interest in her residence.

{¶52} R.C. 5302.22(C)(1) provides: "[i]f an individual who owns real property or an interest in real property as a sole owner or as a tenant in common executes a transfer on death designation affidavit, upon the death of that individual, title to the real property or interest in the real property specified in the affidavit vests in the transfer on death beneficiary or beneficiaries designated in the affidavit."

{¶53} "The designation of a transfer on death beneficiary has no effect on the present ownership of real property, and a person designated as a transfer on death beneficiary has no interest in the real property until the death of the owner of the interest." R.C. 5302.23(B)(4). Thus, the TOD did not transfer any interest to Tabaczynski. The interest in the residence did not vest until Lundquist's death.

{¶54} The evidence submitted in the trial court established that Lundquist was the debtor, that she maintained interest in her residence, and had joint access to funds in a bank account shared with Tabaczynski. Thus, the trial court correctly concluded that Lundquist was not insolvent or otherwise without assets to satisfy the breach of contract claim. As such, Concord Village's second assignment of error, as it relates to the determination of Lundquist's solvency, is without merit.

{¶55} The determination of Lundquist's solvency is not dispositive of Concord Village's fraudulent transfer claim as to the transfer of funds from the bank account. At least one Ohio appellate court has determined that under a plain reading of R.C.

Case No. 2025-L-033

1336.04(A)(2), insolvency is not a required element. "To the contrary, the debtor's insolvency is one of several listed factors to consider upon assessing whether the debtor had 'actual intent to hinder, delay, or defraud' one's creditor. R.C. 1336.04(B). Thus, Appellee was not required to establish Joann's insolvency . . . . *Id.*" *St. Clairsville Pointe, Inc. v. Musilli*, 2022-Ohio-2646, ¶ 45 (7th Dist.).

{¶56} Concord Village contends in its fourth assignment of error that it presented a sufficient number of badges of fraud pursuant to R.C. 1336.04(B) to prove intent to hinder, delay, or defraud Concord Village under R.C. 1336.04(A)(1).

{¶57} "'If the party alleging fraud is able to demonstrate a sufficient number of "badges," an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent.'" *Seed Consultants, Inc. v. Schlichter*, 2012-Ohio-2256, ¶ 13 (12th Dist.), quoting *Saez Assoc., Inc. v. Global Reader Servs., Inc.*, 2011-Ohio-5185, ¶ 13 (8th Dist.). "While the existence of one or more badges does not establish a per se fraudulent transfer, a creditor need not demonstrate the presence of all badges in order to carry its burden." *Id.*, citing *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.*, 87 Ohio App.3d 644, 650 (10th Dist.1993).

{¶58} The trial court found six badges of fraud applicable regarding the transfer of bank account funds: 1) the transfer of the bank account funds were to an insider (Tabaczynski); 2) the transfer was not initially disclosed to Concord Village; 3) Lundquist had been threatened with a suit by Concord Village before the transfer was made; 4) Lundquist (or her agent) removed the assets; 5) Lundquist received no consideration for the transfer; and 6) the transfer occurred shortly after a substantial debt was incurred.

{¶59} Conversely, the trial court did not find: 1) that Lundquist retained possession or control over the accounts and the residence after the transfer; 2) that the transfer was of substantially all of the assets of Lundquist; 3) that Lundquist absconded; 4) that Lundquist was insolvent or became insolvent shortly after the transfer; or 5) that the transfer involved essential assets of a business.

{¶60} Despite concluding that 6 of the 11 badges of fraud were applicable in this case; the court below concluded that Concord Village ha[d] "not established fraudulent transfer under either R.C. 1336.04 or 1336.05." Specifically, the trial court determined that there was "no evidence that Lundquist transferred substantially all of her assets, absconded, was insolvent at the time of the transfers, is now insolvent, or is without assets to satisfy the breach of contract claim." Concord Village disagrees and claims that the burden shifted to Tabaczynski to show that the transfers were not fraudulent.

{¶61} R.C. 1336.04(A)(1) requires that the transfer at issue be made by a debtor or the individual liable for the claim. Because Lundquist is the debtor, Lundquist necessarily had to make the transfer, or in the alternative, Tabaczynski had to have made the transfer at Lundquist's request or made the transfer as Lundquist's power of attorney.

{¶62} Under R.C. 1336.04(A)(2)(b), the transfer has to be made by a debtor, "without receiving a reasonably equivalent value in exchange for the transfer or obligation," and "the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."

{¶63} Concord Village cites to *Montefiore Home v. Fields*, 2019-Ohio-1989 (8th Dist.), in support of its position that Tabaczynski is liable for the fraudulent transfer of

funds from the joint bank account. The funds were used to pay the mortgage on Tabaczynski's New Jersey residence. In *Fields*, the Eighth District Court of Appeals reversed a trial court's decision granting summary judgment in favor of Fields on a skilled nursing home's claim of fraudulent transfer. Fields did not sign the skilled nursing home's admission agreement. However, Thorton, Fields's godmother, listed Fields as her representative. *Id*. at ¶ 2. The agreement Thornton signed contained the following provision in relevant part: "You have asserted that the Representative has legal access to and control over the Resident's income, assets, personal and real property, and resources * * * and You understand that Montefiore is entering into this Agreement in reliance on that assertion." *Id*. Fields, who was designated as Thornton's power of attorney, also represented to the skilled nursing home that she would address Thornton's balance. Despite those representations, Fields did not settle the balance. Instead, the skilled nursing home alleged that Fields depleted Thornton's bank accounts through withdrawals and transfers. *Id*. at ¶ 5. *Fields* is factually distinguishable from the instant case.

{¶64} Here, there was no mention of a financial representative in the admissions agreement. Tabaczynski was solely listed as an emergency contact. There was also nothing in the record to suggest that Tabaczynski agreed to or made any representation to Concord Village that he would satisfy Lundquist's debt. Tabaczynski's prior issuance of two checks to Concord Village on Lundquist's behalf did not establish that he agreed to pay her debts. Unlike Fields, who could only access Thornton's account due to her designation as power of attorney, Tabaczynski was a joint owner of the bank account.

Case No. 2025-L-033

{¶65} Lundquist and Tabaczynski did not address the transfer of funds from the joint bank account in their joint motion for partial summary judgment.[1] Their motion only addressed the execution of the TOD for Lundquist's real property and Tabaczynski's status as Lundquist's power of attorney. As such, the trial court could not grant summary judgment in favor of Lundquist and Tabaczynski on their joint motion. However, because Concord Village also sought summary judgment on this claim, the trial court was not foreclosed from granting such relief to Lundquist and Tabaczynski.

{¶66} In its partial motion for summary judgment, Concord Village alleged that from March 2022 to October 2024, Tabaczynski transferred $34,354.06 from the joint bank account to pay for his personal mortgage obligations and used $1,114.26 to pay for utilities for his residence. Concord Village attached bank statements and other records in support of its partial motion for summary judgment which indicated that during this period, the only deposits were Lundquist's social security and benefits checks. The Citizens Bank account statements showed a balance of $100,751.30 in March 2022. By October 2024, the account had a balance of $67,414.80.

{¶67} Generally, upon presenting a sufficient number of badges of fraud, the burden shifted to Lundquist and Tabaczynski to prove that the transfers were not fraudulent. *Seed Consultants, Inc.*, 2012-Ohio-2256, at ¶ 13 (12th Dist.), quoting *Saez Assoc.*, 2011-Ohio-5185, at ¶ 13. Tabaczynski and Lundquist, in their joint response to Concord Village's motion for summary judgment, did not address the badges of fraud or present any evidence that the transfers were not fraudulent or that Lundquist received a

---

1. The complaint alleged that Tabaczynski used Lundquist's real estate *and* assets for his personal gain.

Case No. 2025-L-033

reasonably equivalent value in exchange for the transfer of funds. Indeed, Lundquist and Tabaczynski simply averred that Tabaczynski was a partial owner of the funds.

{¶68} Conclusory statements do not satisfy the burden under Civ.R. 56:

> The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, *the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.*

(Emphasis added.) *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. However, despite this flaw, the trial court was not precluded from granting summary judgment in Tabaczynski's favor. There is nothing in the record to demonstrate that Tabaczynski's transfers were fraudulent. Indeed, the only evidence before the trial court regarding the transfers were the banking statements which listed both Tabaczynski and Lundquist as account holders. As a joint owner of the bank account, Tabaczynski had equal access to and equal ownership of the funds.

{¶69} The trial court had all relevant evidence before it, and no genuine issue as to any material fact existed. Thus, Tabaczynski was entitled to judgment as a matter of law. *See Morgan*, 2008-Ohio-87, at ¶ 16, quoting *State ex rel. J.J. Detweiler Ents., Inc. v. Warner*, 2004-Ohio-4659, ¶ 13, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio St.3d 25, 28 (1986).

{¶70}  As such, the trial court did not err and Concord Village's fourth assignment of error is without merit.

**Improperly Weighing Evidence**

{¶71}  Concord Village asserts that the trial court improperly weighed evidence submitted on summary judgment on the fraudulent transfer claim, favoring the affidavit of Tabaczynski, "despite it being contradicted by both the [POA] and deposition testimony."

> When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 [413 N.E.2d 1187] (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 [604 N.E.2d 138](1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682 [2003 WL 22931361], ¶ 36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 [106 S.Ct. 2505, 91 L.Ed.2d 202] (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 [671 N.E.2d 241] (1996). *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837 [2013 WL 3367058], ¶ 5–6.

(Bracketed text in original.) *Brink v. Giant Eagle*, 2017-Ohio-7960, ¶ 35 (11th Dist.).

{¶72}  Tabaczynski's affidavit did not conflict with the deposition testimony or the executed POA. The POA granted Tabaczynski with the authority to act on behalf of Lundquist. The POA did not create an obligation to act. Tabaczynski's deposition testimony and his affidavit supported this understanding of the POA. Thus, the trial court did not improperly weigh the evidence. Instead, it considered all relevant evidence

Case No. 2025-L-033

submitted by the parties and determined that Tabaczynski and Lundquist must prevail as a matter of law.

{¶73} As such, the trial court did not err when it granted summary judgment in favor of Tabaczynski and Lundquist. Accordingly, Concord Village's third assignment of error is without merit.

## Ohio's Uniform Power of Attorney Act

{¶74} Finally, Concord Village argues that the trial court erred in its construction and application of Ohio's Uniform Power of Attorney Act, specifically R.C. 1337.34. No cause of action was brought pursuant to the act. Instead, Concord Village argues that the trial court erred by not extending personal liability to Tabaczynski for his alleged failures as Lundquist's power of attorney. Concord Village appears to take issue with the trial court's acceptance that the POA did not create an obligation to pay Lundquist's expenses and debts.

{¶75} R.C. 1337.34(A) provides in pertinent part:

Notwithstanding provisions in the power of attorney, an agent that has accepted appointment shall do all of the following:

(1)     Act in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest;

(2)     Act in good faith;

(3)     Act only within the scope of authority granted in the power of attorney;

(4)     Attempt to preserve the principal's estate plan to the extent actually known by the agent if preserving the plan is consistent with the principal's best interest based on all relevant factors, including all of the following:

(a) The value and nature of the principal's property;

Case No. 2025-L-033

(b) The principal's foreseeable obligations and need for maintenance;

(c) Minimization of taxes, including income, estate, inheritance, generation-skipping transfer, and gift taxes;

(d) Eligibility for a benefit, a program, or assistance under a statute or regulation.

{¶76} R.C. 1337.34 (B) further provides:

Except as otherwise provided in the power of attorney, an agent that has accepted appointment shall do all of the following:

(1)     Act loyally for the principal's benefit;

(2)     Act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest;

(3)     Act with the care, competence, and diligence ordinarily exercised by agents in similar circumstances;

(4)     Keep a record of all receipts, disbursements, and transactions made on behalf of the principal;

(5)     Cooperate with a person that has authority to make health-care decisions for the principal to carry out the principal's reasonable expectations to the extent actually known by the agent and, otherwise, act in the principal's best interest.

{¶77} Concord Village asserts that there was no evidence to support Tabaczynski complied with these provisions. Concord Village contends that Tabaczynski's failure to comply as attorney-in-fact led to improper and unauthorized transfers of Lundquist's money from the joint bank account to pay Tabaczynski's personal mortgage obligations. As previously discussed above, the POA granted Tabaczynski the authority to act on behalf on Lundquist. Neither the POA nor Agreement created an obligation for

Case No. 2025-L-033

Tabaczynski to act. As such, any alleged failure or breach of Tabaczynski's obligations or duties to Lundquist is not appropriately before the court.

{¶78} Accordingly, Concord Village's fifth and final assignment of error is without merit.

## Conclusion

{¶79} For the reasons set forth above, the judgment of the Lake County Court of Common Pleas is affirmed.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
PRESIDING JUDGE ROBERT J. PATTON

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-033